David J. Winterton, counsel for the appellant, NTI-NV, Inc. Good morning. I will not ask if you want to reserve any time. How's that? Okay. Since you're here on your own. Thank you. You're welcome. Okay, I'll get started. Basically, what we're dealing with is whether or not... Go ahead and make the appearance for the record. Oh, I'm sorry. Yes. David Winterton on behalf of the debtor, NTI-NV. Thank you very much. You bet. Now, basically, what we're talking about is an issue, whether or not there was an abuse of discretion regarding whether a case should have been dismissed, converted, or whether even an examiner should have been appointed. Now, that's kind of... And the standard for abuse of discretion is, did the court, one, improperly apply the rule of law? No, I'm not disputing that here because the judge was applying 1112, which is the standard of law. But the other issue is whether or not the application, the facts relevant herein, were illogical, impossible, or without support and reference that may be drawn from the facts in the record. Now, there's a Ninth Circuit case, N. Ray Owens 552 Federal F. 3rd 958-2009 case that says, if a bankruptcy court determines there is cause to convert a case, it must decide whether to dismiss, convert, or appoint a trustee or examiner is in the best interest of the creditors. Number two, identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interest of the creditors. And in this case... Oh, also, there's another case that I found that I thought was intriguing that says, and it comes out of the Fourth Circuit, that says, regardless of the party's arguments, the bankruptcy court has an independent obligation under 1112 to consider what would happen if all creditors on dismissal, in light of an analysis, whether dismissal or conversion is in the best case. So they put on the court to have the best interest. So now we're faced, Judge Cox has got a decision. Do I dismiss it, convert it, or should I appoint an examiner? Now what we have here is all the creditors, and that's why nobody's really opposing this, all the creditors but one, and I think there may have been another one, but they kind of disappeared, wanted the case dismissed because the claim wasn't confirmed. And I'm going to explain a little bit about it because I think the judge was confused. And that's why it should be dismissed. But really all the creditors wanted it dismissed because they wanted to continue operations. There was a liquidating analysis that shows that's in the best interest of the creditors. That's part of the plan of disclosure statement that has been disclosed. Now the argument that was made by one creditor that's not here says, the best interest of the creditors to have a Chapter 7 trustee appointed who can diligently investigate to the extent of encumbrances and of the assets of the estate. That's on the transcript, page 17, line 18. That's perfect for an examiner to come in and look at. First of all, Mr. Warrington, let me interrupt you for a second. You weren't talking about an examiner at all, either in your motion to dismiss or at the hearing on the order to show cause. The only question was conferred or dismissed, right? Because the case was not going to continue as a Chapter 11. You wanted it dismissed. I wanted it dismissed, but I also told the court that if she had an issue and questioned some of the things, and that's part of the transcript, that she should have someone to come in and look at it. And I was referring to an examiner. I didn't come out and say examiner, but I said, have someone come in and look at it then. So that is part of the record, and it's in tab 3, and I can find it exactly for you. But it is part of the record that I said, let's have somebody come in and look at it then. So with that recommendation, I was pushing dismissal, but I did say look at it. Mr. Winters, isn't having a trustee appointed, getting someone to come in and look at it? You broke up, and I missed part of the question. I'm sorry. Isn't appointing a trustee, having someone come in and look at it? Yeah, we would have agreed to that rather than a committee. I'm referring to the Chapter 7 trustee. Okay, what the difference is, the Chapter 7 trustee does not want to be responsible for the operations of the business. And so what the Chapter 7 trustee did is came in and shut everything down. So no longer is there any more business. Everything shut down. The only thing that was there is $13,000 that was in the bank account. All the people with the contracts are gone. There's no business. It's dead. Now you've got these people that are not getting paid. There's buses there, which I'll get into, that now they're left with, well, I guess we're going to have to repossess our buses if there's a deficiency. Their claims are going to be bigger. And since there's no operation of business, no operation, then there's no money generated. The amount of debt was small in this case. It was about $65,000 if you read the disclosure statement. And also the debtor had cash flow. They even admit in the pleadings that they had sufficient cash flow to be able to supply, to pay a plan of reorganization. Another thing is there was post-petition financing that we were trying to seek, which allowed, one, a factoring agreement, and two, $200,000 in post-petition financing. We could have actually taken that post-petition financing of $200,000, paid all the creditors off, and it would have been done. If it was dismissed, the post-petition financing still, they're still willing to do it. But what had happened is, no, the Chapter 7 trustee stepped in, he didn't want to operate it, shuts it down, and it's gone. And, again, the disclosure statement, which is part of the record, shows in the analysis that's what would happen if it was converted to a 7. Now let's talk a little bit about this is where I think the judge was confused and why I don't think she understood. The structure is you have NTINV, and what that is is a management company. They manage, they get the contracts, they do the accounting, they do all the work. Then they're doing work for a sister company, not a sister, a subsidiary, which is Platinum Transportation, that is a series LLC that has all the different companies. There's a taxicab company, there's a bus company, there's a charter company, and they're the ones that do all of that. Now, when we tried to get post-petition financing, which is part of the disclosure statement, the post-petition financing people said, Okay, Mr. Winnerton, we'll give them post-petition financing. We want to have a lien on all the buses and all the cars, everything, but we also want the debtor to be a co-signer on this for post-petition financing. So then what happened is we've attached, and it's, I think, tab 12, page 329, it's a factoring agreement, and behind that is the post-petition loan for $200,000. And so it's got the debtor's name on it. Well, the judge ruled, and we have attached the transcript, it says, Mr. Winnerton, you've got to show me that the debtor owns these vehicles. And I said, Your Honor, the debtor does not own these vehicles. We've talked about this throughout the case. But what it is is the debtor's guaranteed or has co-signed, not guaranteed, co-signed on the debt. So what we're doing, and the only way they'll do it is that we co-sign. So she says the plan is totally unconfirmable because what we're doing is trying to assert jurisdiction over the cars plus have jurisdiction over the debts. Well, the debtor's going to be over the debt. They want us to be co-signed. The evidence is there, the name is there, and all these others. And she's saying, Mr. Winnerton, you cannot do that. The bankruptcy court does not have jurisdiction. Under 364, the bankruptcy court can approve the debtor to give post-petition financing and co-sign. It's not limited that, oh, only if it's just the debtor. Well, they wouldn't do that either because they wanted the security. And then she says you're commingling these two. And she says the corporate formalities, you're disregarding the corporate formalities. No evidence of that. Nothing there to support that. The corporate formalities were being followed. It's the post-petition financing and the operations. That's how she's looking at it and saying you're commingling. But the bank accounts, the records are all separate. They're kept. There's a professional accounting firm. Jacobian Associates is the one that does the accounting to make sure everything is properly done. But that's where the confusion came in. And when she said, no, the plan cannot be confirmed because of this and you've got this issue. Then we said let's just dismiss it. She on her own, I filed a motion to dismiss because all the creditors want to get paid. It's the best thing we can do. And she filed a motion, short in time, by herself to convert or dismiss. And this is where we're going. Hopefully I'm not breaking up this time. You said after the case was converted that the trustees shut down the business. What would be accomplished now if the conversion order was reversed? What we would do is we would try to – the people are still standing by. They knew that we filed this appeal and we've done this. And they're willing to restart the company and get it going and working with us. The bus companies haven't repossessed the vehicles. They're just sitting there and they're waiting because these vehicles, okay, you buy them for like a bus for $70,000. When you sell it or put it on the secondary market, it's $20,000. And that's why they're sitting there saying, hey, it's better if you can get up and get going again and then have these buses running and we can get paid. So they're kind of on a standby and that's what we would do is get it going again. And it would be easy for our – based upon the cash flow to go ahead and pay this $60,000 that's in the disclosure statement to get it going. So we believe the court misunderstood. Judge Cox is a great judge, but I think she just misunderstood. And that's why this is in the best interest of the debtor. Yes, it is complicated with the management and the subsidiaries, but I don't think they understood. That's why I said, well, maybe get somebody to come in if you have questions. Has anyone – if the trustee has shut down the business and doesn't want these buses, has anybody requested the trustee to abandon them? If she's not using them and she doesn't want them – or the trustee here. I'm not sure whether it's a she. I'm sorry. But if the trustee doesn't want them and is not using them, do you have interested parties come in and ask for those assets to be abandoned? Actually, one of the interest parties did come in, filed a motion for relief from stay, and it was granted. But they're still sitting there waiting to see what happens because they believe the best interest is if it's dismissed and they can continue to do business with my client with the contacts and the things they have. They've still got – they can run a taxi company up in Reno. They've still got the airport facilities. They still have, right now, the authority to keep running. And then we can pay everybody off versus now it's not – nobody's getting paid. Even the administrative claim that came in and objected is not getting paid. Your Honor, just looking at the facts and looking at everything and even nobody here, it just shows the best interest of everybody is let this case be dismissed. Let's go ahead and let's get this done. Let's let them pay the creditors and go forward. But the conversion just killed everything, and we're trying to rectify that. So I really appreciate the opportunity to be here as a professional and I bring courtesy to the courts and everybody has them. I just want to say thank you. Any last questions, anybody? Nope. Thank you. Okay. Thank you. The matter is submitted. Thank you.
judges: Lafferty, Brand, and Corbit